UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHNNY ONEGA,

                Petitioner,                          **MEMORANDUM AND ORDER**
                                                                 07-CV-1222 (RRM)
   - against -

ROBERT ERCOLE, Superintendent,

                Respondent.
------------------------------------------------------------X

ROSLYNN R. MAUSKOPF, United States District Judge.

      In October of 1998, a New York State Supreme Court jury found petitioner Johnny Onega guilty of murder, robbery, and criminal possession of a weapon. Onega now petitions this Court for a writ of *habeas corpus* under 28 U.S.C. § 2254. Onega challenges the trial court's (1) refusal to hold a hearing on his motion to suppress evidence recovered from his girlfriend's apartment; (2) alleged admission of a hearsay statement by the girlfriend, who never testified at trial; and (3) failure to sanction the prosecution for not disclosing a witness's pre-trial statements.

      For the reasons set forth below, petitioner's claims are without merit and the petition is DISMISSED in its entirety.

## BACKGROUND

      In July of 1996, petitioner and Rafael Pena traveled to Washington D.C., where they sold $125,000 worth of cocaine. (*See* Opp. Aff. (Doc. No. 5) at 2.) On July 7, the two men returned to New York City in Pena's car. (*Id*.) While parked near Pena's house in the Bronx, petitioner shot Pena in the head at close range as he sat in the passenger seat, killing him instantly. (*Id*.;

1

Trial Transcript (Doc. No. 11) (hereinafter "Tr.") at 264[1].) Petitioner then stole the narcotics proceeds and hid them inside stereo speakers located in the apartment of his girlfriend, Yesenia Renoso. (Opp. Aff. at 2; Tr. at 265.)

Later that morning the police discovered Pena's body in the car, now parked near the Queens-Brooklyn border, about four blocks from Renoso's apartment. (Opp. Aff. at 2; Tr. at 195, 202.) Pena's wife provided the police with Renoso's name and telephone number. (Tr. at 200.) After questioning, Renoso consented to a search of her apartment, where the police recovered the money. (Opp. Aff. at 2.) On July 12, petitioner was arrested and confessed to the murder and theft. (*Id.*)

Petitioner was indicted on three counts of Murder in the Second Degree, two counts of Robbery in the First Degree, one count of Criminal Possession of a Weapon in the Third Degree, and one count of Tampering with a Witness. (Reply Br. (Doc. No. 10) at 3; Opp. Aff. at 2–3.) Petitioner pleaded not guilty, and moved to suppress the money recovered during the search of Renoso's apartment. (Opp. Aff. at 3.) The court denied the motion without a hearing, because petitioner lacked standing to contest the entry and search. (*Id.*)[2]

Petitioner's jury trial was held in October of 1998, before the Honorable Justice Timothy Flaherty, Supreme Court, Queens County. (*Id.* at 4.) Petitioner was convicted of Murder in the Second Degree, Robbery in the First Degree, and Criminal Possession of a Weapon in the Second Degree. (*Id.*) The court sentenced petitioner to respective concurrent prison terms of twenty-five years to life, twelve and one-half to twenty-five years, and seven and one-half to fifteen years. (*Id.*)

---

[1] Page numbers refer to the transcript's internal pagination, not to the ECF pagination. Petitioner's trial transcript begins at ECF page 92 of the cited document.
[2] Petitioner also moved to suppress his statements to the police. (Opp. Aff. at 3.) The motion court did order an evidentiary hearing on this matter, but ultimately denied the motion. (*Id.*)

2

Petitioner appealed his conviction, claiming that the trial court improperly refused to hold a hearing on his motion to suppress the money recovered from his girlfriend's apartment, improperly admitted a detective's hearsay testimony that Renoso told the detective the location of the money, and failed to sanction the prosecution for not disclosing prior statements by its witness Francisco Mendez, as required by *People v. Rosario*, 9 N.Y.2d 286, 173 N.E.2d 881 (1961). (*Id.* at 4–5.) On November 10, 2003, the Appellate Division, Second Department, affirmed petitioner's conviction, holding that the trial court properly denied petitioner's motion to suppress the money without a hearing and that petitioner's other claims were "either unpreserved or without merit." *People v. Onega*, 1 A.D.3d 465, 766 N.Y.S.2d 888 (App. Div. 2d Dep't 2003). On January 29, 2004, petitioner was denied leave to appeal to the New York Court of Appeals. *People v. Onega*, 1 N.Y.3d 599 (2004) (table).

On March 28, 2005, petitioner moved *pro se* under § 440.10 of the New York Criminal Procedure Law ("CPL") to vacate his conviction on the ground that his trial attorney provided ineffective assistance. (*See* Reply Br., Ex. 1 ("Pet'r's § 440 Mot.").) Petitioner alleged that his attorney never advised him of two plea offers, and later failed to inform him that he could plead to the indictment and ask for the minimum sentence. (*See* Reply Br. Ex. 3 ("Pet'r's § 440 Reply"), at 5; Reply Br. Ex. 4 ("Pet'r's Supp'l Amdt.").) The state court held a hearing at which petitioner, his trial attorney, and the prosecuting attorney all testified. (*See* Reply Br. Ex. 7 ("Section 440 Hr'g Mins.").) The court denied the motion, finding that no plea offers were extended to petitioner. (Reply Br. Ex. 8 ("Section 440 Hr'g Order").) On March 5, 2007, the Appellate Division denied petitioner's application for leave to appeal. (Reply Br. Ex. 10.)

Two weeks later, petitioner timely applied for a writ of *habeas corpus*. (Pet. (Doc. No. 1).) His *habeas* petition raises three claims, all based on the claims in his direct appeal. First,

petitioner argues that the trial court violated his Fourth Amendment rights when it refused to hold a hearing on his motion to suppress the money recovered from Renoso's apartment. (Pet. at 6; Reply Br. at 18–21.) Second, petitioner argues that his right to a fair trial was violated when the trial court admitted a detective's hearsay testimony that Renoso, who never testified at trial, told the detective the location of the money. (Pet. at 7.) Third, petitioner claims that the trial court should have sanctioned the prosecution for not disclosing witness Francisco Mendez's pre-trial statements. (*Id*. at 9.)

On November 5, the Queens County District Attorney's Office filed an opposition on respondent's behalf, addressing these three claims. On February 19, 2008, petitioner replied with an affidavit and memorandum of law in support of the petition. The reply filing acknowledges that the March 19, 2007, petition only "raised three claims," and references the hearing, hearsay, and pre-trial statement matters. (Reply Br. at 4.) The filing then belatedly attempts to raise a fourth claim of ineffective assistance of counsel, based on the arguments made at petitioner's § 440.10 hearing. (*Id.* at 10–17.) Respondent has not addressed petitioner's attempt to add this claim.

## DISCUSSION

### I. AEDPA Standard of Review

Under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant *habeas* relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law if it contradicts a decision by the Supreme Court or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" limits the law governing a *habeas* petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 365); *accord Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

"The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application" of federal law. *Henry v. Poole*, 409 F.3d 48, 68 (2d Cir. 2005) (citing *Williams*, 529 U.S. at 410–11). A state court bases its decision on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. *See Williams*, 529 U.S. at 413. A federal *habeas* court does not ask whether the state court's application of the governing law was erroneous or incorrect, but, rather, whether it was "objectively unreasonable." *Id.* at 408–10; *see also Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) ("This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of

5

the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## II. Petitioner's Ineffective Assistance Claim

The Court initially addresses petitioner's attempt to raise a claim of ineffective assistance of counsel, first asserted in his reply brief.

Under AEDPA, a one-year statute of limitations governs *habeas corpus* petitions brought by state prisoners. The statute of limitations ordinarily begins to run when a conviction becomes final. *See* 28 U.S.C. § 2244(d)(1)(A). Where an appeal is sought with the New York Court of Appeals, a judgment becomes final ninety days from the date on which leave to appeal is denied, which is the amount of time a prisoner has to petition the United States Supreme Court for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 525 (2003); *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001). A properly filed application for state post-conviction relief may toll the limitations period. *See Acosta v. Artuz*, 221 F.3d 117, 119 (2d Cir. 2000). The filing of a federal *habeas* petition does not, however, toll the statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Petitioner's application for leave to appeal to the New York Court of Appeals was denied on January 29, 2004, so his conviction became final on April 28, 2004. (Pet. at 13.) His limitation period was tolled on March 28, 2005, when he applied for post-conviction relief under CPL § 440.10. (*Id.*) That toll was lifted on March 12, 2007, with thirty one days remaining in which to file his petition. (*Id.*) Accordingly, his March 19, 2007 petition, containing three claims, was timely filed.

Petitioner's reply brief, which attempts to add a fourth claim asserting ineffective assistance of trial counsel, was filed on February 19, 2008. Even if this Court were to treat

6

petitioner's *pro se* reply brief as a motion to amend his *habeas* petition, such motion would be untimely. Fed. R. Civ. P 15(a) governs the grant or denial of such a motion. *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001). Here, petitioner filed his reply brief more than 21 days after service of respondent's brief, thus failing to meet the requirements of Rule 15(a)(1). Moreover, this Court would not grant petitioner leave to amend his pleading under Rule 15(a)(2), because such an amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Petitioner presented his fourth claim far outside the AEDPA statute of limitations, so this Court may consider it only if it "relates back," that is, arises out of the same "conduct, transaction, or occurrence" that underlies a filed claim. *Mayle v. Felix*, 545 U.S. 644, 648 (2005) (citing Fed. R. Civ. P. 15(c)(2)). Amendments to a *habeas* petition cannot "relate back" to a petitioner's trial and conviction. *See id.* at 662–64 ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."). Rather, the original and proposed claims must be "tied to a common core of operative facts . . . ." *Id.* at 664.

Here, petitioner's proposed claim regarding his alleged plea offers does not relate back to his original claims, and thus is time barred. The March 19, 2007 petition nowhere challenges trial counsel's effectiveness, and its three original claims are not drawn to petitioner's sentence or any alleged plea offers. Although the petition lists the § 440 proceeding as a "previously filed . . . motion concerning th[e] judgment of conviction," it makes no *habeas* claims regarding the substance of that motion, nor any Sixth Amendment claims at all. (*See* Pet. at 4.) Therefore, the proposed claim "asserts a new ground for relief supported by facts that differ in both time and type" from his original claims, which are drawn to the disclosure of statements before trial, and to the admission of evidence and testimony at trial. *See Soler v. United States*, Nos. 10 Civ.

04342 (RJH) (MHD), 05 Cr. 00165 (RJH), 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) (citation omitted). Courts find relation back only when underlying claims are the same, when facts and legal theories are intertwined, or when one theory clarifies and supplements the other. *Id.* (collecting cases).

Further, even if this Court were to reach the merits of petitioner's claim, he has not shown that the 440 court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), which governs claims of ineffective assistance of trial counsel in the plea bargaining context. *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). To succeed on this kind of *Strickland* claim, a petitioner "must show that (1) the attorney failed to communicate a plea offer or failed to provide adequate advice about the plea and sentencing exposure, and (2) there is a reasonable probability that but for the attorney's deficient performance, the defendant would have accepted the plea offer." *Faulkenson v. Conway*, No. 04 Civ. 80 (SJF), 2007 WL 160926, at *11 (E.D.N.Y. Jan. 10, 2007) (citing *Purdy v. United States*, 208 F.3d 41, 49 (2d Cir. 2000)); *see Frye*, 132 S. Ct. at 1410.

The 440 court found that no actual plea bargains were offered by the district attorney. (Section 440 Hr'g Order at 5.) Based on the testimony of petitioner's trial counsel and his prosecutor, which the 440 court credited over that of petitioner, the court determined, first, that the alleged plea bargains were merely "what the defense hoped would be offered, in return for defendant's cooperation on a federal drug investigation," and, second, that petitioner never agreed to cooperate for fear of implicating his family in the investigation. (Section 440 Hr'g Order at 3–4.) A *habeas* court applies a presumption of correctness to the factual and credibility determinations made by a state court in a § 440 hearing. *See* 28 U.S.C. § 2254(e)(1); *Shabazz v. Artuz*, 336 F.3d 154, 163 (2d Cir. 2003); *Batchilly v. Nance*, No. 08 Civ. 7150 (GBD)(AJP),

2010 WL 1253921, at *40 (S.D.N.Y. Apr. 2, 2010) (collecting cases), *report and recommendation adopted by* 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011).

Petitioner contends that the state court gave too much weight to the hearing testimony of trial counsel, who contradicted his own statement from a previous affidavit that "[a]t the time of [the] trial, there were two plea offers on the table." (Section 440 Hr'g Mins. at 16; *see* Reply Br. at 12–13.) At the hearing, trial counsel explained that another attorney retained by petitioner's family drafted the "poorly worded" affidavit, and that trial counsel "didn't read it very carefully" before signing. (Section 440 Hr'g Mins. at 16.) Trial counsel clarified at the hearing that "since [petitioner] never came into a proffer, there was no cooperation agreement" and thus no reduced sentence available at trial. (*Id.* at 16–17.) This statement was confirmed by the hearing testimony of the trial prosecutor, Queens County Assistant District Attorney Barry Weinrib, who testified that no plea offers were recorded in the District Attorney's file or the Bureau Chief's notes. (*Id.* at 41.) Petitioner has not shown that the decision to credit this live testimony and its supporting evidence over trial counsel's prior affidavit testimony was "objectively unreasonable in light of the evidence presented in the state-court proceeding . . . ." *Miller–El*, 537 U.S. at 340.

Petitioner also argues that trial counsel was ineffective for failing to sufficiently inform him of the option to plead guilty to the indictment. (*See* Reply Br. at 14–15.) At petitioner's § 440 hearing, the prosecutor confirmed that a defendant may plead guilty to the indictment and then seek "the mercy of the court" in sentencing at any time before trial. (*See* Section 440 Hr'g Mins.at 5.) A review of the state court record shows that the prosecutor presented this option one month before trial, in open court and in the presence of petitioner, who heard his trial counsel decline the offer. (State Ct. Rec. (Doc. No. 11) at 88–91.) Further, the 440 court found that trial counsel "discuss[ed] the strength of the case for the prosecution with the defendant, with

9

particular focus on the defendant's confession." (Section 440 Hr'g Order at 3–4.) Petitioner testified at his § 440 hearing that, although he believed that he was innocent because he shot Pena in self-defense, if properly advised he would have pled guilty to the indictment and accepted a sentence of 15 years to life instead of going to trial. (Section 440 Hr'g Mins. at 29, 34.) The hearing judge found his testimony "self-serving, incredible and unreliable." (Section 440 Hr'g Order at 3.) Here, too, petitioner has not shown that the state court's credibility determinations or its application of *Strickland* to his claim were objectively unreasonable.

Because petitioner's attempt to amend his habeas petition is untimely under both Rule 15 and AEDPA, and because his proposed claim regarding his alleged plea offers is in any event without merit, that proposed claim is DENIED.

### III. Review of Petitioner's Original Claims

### A. Refusal to Conduct a Suppression Hearing

In his first *habeas* claim, petitioner alleges that the trial court violated his Fourth, Fifth, and Fourteenth Amendment rights when it refused to conduct hearings on his standing to contest the search of Renoso's apartment, or on his motion to suppress the money recovered there. (*See* Pet. at 6; Reply Br. at 18–20.)

In an omnibus pre-trial motion dated September 30, 1996, petitioner requested "suppression of any property seized from the person or in possession of the defendant or, in the alternative, . . . a Mapp/Dunaway hearing . . . ."[3] (State Ct. Rec. (Doc. No. 11-4) at 46–47.) In response, the People asserted that petitioner lacked standing to challenge the legality of the seizure of the money, "as he had no expectation of privacy in [Renoso's] apartment . . ., the

---

[3] A *Mapp/Dunaway* pre-trial hearing is used to decide whether evidence was obtained through violation of a defendant's Fourth Amendment right to be free of unreasonable search and seizures, *see Mapp v. Ohio*, 367 U.S. 643 (1961), and whether probable cause existed for an arrest, *see Dunaway v. New York*, 442 U.S. 200 (1979). *Kirk v. Burge*, 646 F. Supp. 2d 534, 540 n.2 (S.D.N.Y. 2009).

10

location from which the physical property was seized." (*Id.* at 62–63.) In the alternative, the People argued that the warrantless seizure of property from Renoso's apartment "was justified in this case because the tenant(s) . . . freely and voluntarily gave consent to the officer(s) before the search was conducted." (*Id.* at 63.) The trial court denied petitioner's motion and refused to conduct a hearing, because "the property recovered from [Renoso's apartment] was not recovered from the defendant's home and his moving papers did not allege any expectation of privacy in those premises." (*Id.* at 67.) Petitioner sought reconsideration, arguing that he could establish a personal, legitimate expectation of privacy in the apartment. (*Id.* at 72.) Petitioner also provided a transcript of an interview with Renoso's mother, discussing when and where petitioner stayed in the family's apartment. (*Id.*) The court again found that petitioner had failed to establish an expectation of privacy in the apartment, and denied the motion for reconsideration. (*Id.* at 85–86.)

On direct appeal, petitioner argued that his motion papers had stated sufficient facts to warrant a suppression hearing, or, in the alternative, a hearing on his "standing to assert a violation of his right to be free from an unreasonable search and seizure." (*Id*. at 25–32.) The Appellate Division found that the Supreme Court had properly denied petitioner's motion without a hearing, since "[e]ven assuming, arguendo, that the defendant established standing to seek suppression of the evidence . . . , his motion papers . . . failed to controvert or even address the People's contention that the search was conducted pursuant to the valid consent of the defendant's girlfriend." *People v. Onega*, 1 A.D.3d at 465.

As an initial matter, these state proceedings, directly or indirectly, only refer to the Fourth Amendment and its interpreting cases. While petitioner's reply brief alludes to violations of the Fifth and Fourteenth Amendments, he never presented claims under these amendments to the

11

state court, and may no longer do so. *See Spence v. Superintendent*, 219 F.3d 162, 170 (2d Cir. 2000) ("Because [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.")); CPL § 440.10(2)(c) (court must deny motion to vacate raising record-based claims which could have been raised on direct appeal but unjustifiably were not). When a petitioner fails to present federal constitutional claims to a state court, and the claims can no longer be raised in that forum, the claims are barred from *habeas* review. *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006); *c.f. Cameron v. Smith*, No. 11 Civ. 5100 (BMC), 2012 WL 1004893, at *4 n.1 (E.D.N.Y. Mar. 23, 2012) (finding that Fourth Amendment challenge was procedurally barred from *habeas* review where petitioner had "framed his claim on direct appeal as a due process claim.").

Further, although petitioner has properly exhausted a Fourth Amendment claim for the denial of his hearing request, this Court may not review that ruling unless petitioner shows that he was denied a "full and fair opportunity" to litigate his claim in state court. *Graham v. Costello*, 299 F.3d 129, 133–34 (2d Cir. 2002) (citing *Stone v. Powell*, 428 U.S. 465, 481–82 (1976) & *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)); *Bell v. Ercole*, 631 F. Supp. 2d 406, 415–16 (S.D.N.Y. 2009). Federal *habeas* relief is available for Fourth Amendment claims only where the state "provides no corrective procedures at all to redress Fourth Amendment violations" or where the state provides the procedures but "the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." *Gates v. Henderson*, 568 F.2d 830, 838 (2d Cir. 1977) (citing *Stone*). Petitioner has not established the availability of *habeas* relief on either ground.

Article 710 of the New York Criminal Procedure Law expressly provides an opportunity for resolving Fourth Amendment claims. Fourth Amendment claims may also be raised in the

Appellate Division on an appeal from a judgment of conviction. Courts have repeatedly found these combined procedures to be facially valid mechanisms under *Gates* and *Stone* for the resolution of Fourth Amendment claims. *See, e.g., Capellan*, 975 F.2d at 70 n.1; *Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir. 1986); *Bell*, 631 F. Supp. 2d at 416 n.3 (S.D.N.Y. 2009); *Taylor v. Kuhlmann*, 36 F. Supp. 2d 534, 549 (E.D.N.Y. 1999). In fact, even if petitioner had failed to move for suppression under § 710 before or during trial, the mere availability of the procedure would still preclude petitioner from obtaining *habeas* review unless he could show an "unconscionable breakdown." *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983); *see also Cappiello v. Hoke*, 698 F. Supp. 1042, 1051 (E.D.N.Y. 1988). Far from showing that these facially-valid procedures were unavailable to him, petitioner in fact confirms that he utilized these procedures to address his claim.

The mere denial of an evidentiary hearing for insufficient allegations of fact is not an "unconscionable breakdown" of such available procedures. *See, e.g., Lopez v. Lee*, No. 11 Civ. 2706 (JG), 2011 WL 6068119, at *9 (E.D.N.Y. Dec. 7, 2011); *Harrison v. Smith*, No. 05 Civ. 5953 (JGK)(FM), 2011 WL 3370391, at *10 (S.D.N.Y. July 14, 2011); *Cimino v. Conway*, No. 08 Civ. 6318 (MAT), 2011 WL 815677, at *9 (W.D.N.Y. Mar. 2, 2011). Under New York law, a criminal defendant is not entitled to a suppression hearing unless he provides sworn allegations of fact that establish a legal basis for suppression. *Lopez*, 2011 WL 6068119, at *9 n.11 (citing CPL §§ 710.60(1) & (3); *People v. Bryant*, 8 N.Y.3d 530, 869 N.E.2d 7, 9 (2007); *People v. Mendoza*, 82 N.Y.2d 415, 624 N.E.2d 1017, 1021–24 (1993)). Here, the Appellate Division affirmed the lower court's refusal to conduct a hearing because petitioner never addressed, let alone controverted, the People's contention that Renoso validly consented to the search of her apartment. *See People v. Onega*, 1 A.D.3d at 465 (citing CPL 710.60(3)(b); *People v. Obee*, 749

N.Y.S.2d 559, 299 A.D.2d 426 (App. Div. 2d Dep't 2002); *People v. Mendoza*, 82 N.Y.2d 415, 624 N.E.2d 1017 (1993); *People v. Kennedy*, 284 A.D.2d 346, 725 N.Y.S.2d 369 (App. Div. 2d Dep't 2001)). That ruling properly followed Fourth Amendment precedent holding that the prohibition on warrantless entry of a person's home to search for specific objects does not apply to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) and *United States v. Matlock*, 415 U.S. 164, 171 (1974)). Petitioner's state court filings and habeas petition nowhere suggest that Renoso was unauthorized to consent to the search of the apartment or the speakers, or that it was unreasonable for the arresting officers to believe that she had the authority to so consent. *See Rodriguez*, 497 U.S. 188–89.

In any event, even if petitioner could show that the state court denied the hearing erroneously, such a showing would not entitle petitioner to federal review of his claim under the fourth amendment. *Capellan*, 975 F.2d at 71–72. And as noted above, claims regarding the hearing denial under any other amendment are procedurally defaulted.

Because valid state mechanisms were available to resolve petitioner's Fourth Amendment claim, *habeas* review of that claim is precluded. Accordingly, petitioner's first *habeas* claim is DENIED.

## B. Admission of Hearsay Statement

Petitioner next argues that his rights to a fair trial were violated when, as he alleges, the trial court admitted a detective's hearsay testimony that Renoso, who never testified at trial, told the detective the location of the money. (*See* Pet. at 7.)

The testimony at issue was given by Detective Walter Panchyn, who had questioned petitioner's girlfriend Renoso at the police station shortly after the murder. Panchyn stated on direct examination that, after Renoso had finished making a statement,

> I had a conversation with the [sic] Detective Wilde, and I asked Detective Wilde to accompany Miss Renoso back to her, to her residence; in that I wanted him to retrieve a sum of U.S. currency which was at her residence, which she had told me about.

(Tr. at 207.) Trial counsel immediately objected to Panchyn's tesitmony. (*Id.*) The court sustained the objection, struck the statement, and instructed the jury to disregard "the portion that she had told him about." (*Id.*) Shortly thereafter, the prosecutor asked Panchyn what, exactly, he had told Wilde. Panchyn responded, "I told Detective Wilde to accompany Miss Renoso back to her residence at 1451 Wilson Avenue, and to retrieve a —." (*Id.* at 208.) Trial counsel again objected, and the court again sustained the objection. After Panchyn attempted to continue, "And that Miss Renoso —," trial counsel was granted a chambers conference.

In chambers, the prosecutor explained, "I want this witness to be able to say specifically what he told Johnnie Wilde to do, otherwise, what Johnnie Wilde does makes no sense, goes there to recover the money. I am not attempting to bring up what was said . . . by Miss Renoso . . . ." (*Id.* at 209.) Trial counsel disagreed, arguing that the prosecution was "trying through the back door to bring in hearsay which is extremely damaging to my client . . . ." (*Id.* at 210.) Trial counsel also challenged the prosecutor's assertions that Renoso was unavailable to testify. (*Id.* at 211.) Justice Flaherty concluded that he would allow Panchyn to state only that he "went to that area to get the money," but not that he received statements from Renoso. (*Id.* at 212.)

Upon return to the courtroom, Justice Flaherty guided Panchyn through the relevant testimony.

15

> THE COURT: Did you direct this other detective — what's his name, Wilde?
> THE WITNESS: Right.
> THE COURT: — to go to the apartment of that woman?
> THE WITNESS: Yes.
> THE COURT: All right. Did he go there?
> THE WITNESS: Yes.
> THE COURT: All right. Go ahead.

(*Id.* at 213–14.) No further statements by Renoso were offered by Panchyn.

Petitioner, on direct appeal, argued that the admission of this testimony at trial "violated Appellant's right to confront and cross-examine the witnesses against him in violation of both the Federal and State Constitutions." (State Ct. Rec. (Doc. No. 11-4) at 35.)).[4] The Appellate Division found this claim "either…unpreserved for appellate review or without merit." *People v. Onega*, 1 A.D.3d at 465. This language indicates a merits determination to which AEDPA deference is given. *See Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006).

"The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.' " *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998), *abrogated on other grounds by Perry v. New Hampshire*, 132 S.Ct. 716 (2012) (quoting *Downline v. United States*, 493 U.S. 342, 352 (1990)); *see McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 72–73 (2d Cir. 2011). In order to constitute a denial of due process, the prejudicial evidence erroneously admitted must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have

---

[4] Respondent erroneously contends that petitioner never presented this claim to any state court as a constitutional issue. (Opp. Mem. at 19.) In fact, as noted above, petitioner's appellate brief clearly alleges a constitutional violation. Where a petitioner specifically references his Sixth Amendment rights to the highest state court, the state court is considered "adequately apprised" of a federal constitutional claim. *Cotto v. Herbet*, 331 F.3d 217, 237 (2d Cir. 2003).

existed on the record without it." *McKinnon*, 422 Fed. App'x at 73 (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks omitted)).

Petitioner has not shown that the Appellate Division's decision was contrary to clearly established federal law. The trial court never in fact admitted Renoso's statement, and upon its introduction, struck the statement. Any limited prejudice to petitioner that may have resulted from introduction of the partial statement was minimized by Justice Flaherty's immediate curative instruction to disregard it. Juries are presumed to understand and follow such curative instructions. *Roldan v. Artuz*, 78 F.Supp.2d 260, 281 (S.D.N.Y.2000) (collecting cases). Petitioner has not come close to demonstrating that the partial elicitation of Renoso's statement was material, when viewed in the context of the court's subsequent correction and the entire record before the jury. *See Dunnigan*, 137 F.3d at 125.

Because petitioner has failed to show that the Appellate Division's decision on his hearsay claim was contrary to clearly established federal law, and because in any event the claim is meritless, petitioner's second *habeas* claim is DENIED.

## C. *Rosario* Violation

Lastly, petitioner alleges that the state court should have sanctioned the prosecution for withholding pre-trial witness statements. (Pet. at 8.)

At trial, witness Francisco Mendez testified that, before the murder, he had overheard petitioner and his stepbrother converse about robbing the decedent. (Tr. at 368–84.) Before trial, the prosecutor had interviewed Mendez in connection with this allegation while he was incarcerated at Fort Dix in New Jersey. (*Id.* at 354.) Although the prosecutor later recalled taking four pages of notes during that interview, only three pages were produced at trial. (*Id.* at 364.) The Court reviewed the extant pages and decided not to sanction the prosecution for failing to

17

produce the missing page. (*Id.* at 434.) The Court found that the pages at issue "are not Rosario, they do not go to the subject matter of anybody's testimony, certainly not Mendez. They are repetitive. They are all addresses and directions, and some names; having nothing to do with any substance of anybody's testimony, including the witness." (*Id.*) Petitioner, on direct appeal, argued that the failure to sanction the prosecutor "deprived the defendant of a fair trial." (State Ct. Rec. (Doc. No. 11-4) at 36.) The Appellate Division found this claim "either…unpreserved for appellate review or without merit." *People v. Onega*, 1 A.D.3d at 465.

*Habeas* review is limited to violations of the "Constitution, laws, or treaties of the United States," not state court determinations of state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). Under New York state law, a criminal defendant is entitled to the prior statements of the prosecution's witnesses. *See Rosario*; CPL § 240.45(1)(a). A claim under *Rosario* implicates only state law, so failure to comply with *Rosario* alone is not a basis for *habeas* relief. *Shankle v. Unger*, No. 09 Civ. 1902 (SLT), 2011 WL 1322017, at *8 (E.D.N.Y. Apr. 4, 2011) (citing *Green v. Artuz*, 990 F. Supp. 267, 274 (S.D.N.Y. 1998)); *see Landy v. Costello*, 141 F.3d 1151, 1998 WL 105768, at *1 (2d Cir. 1998) (table); *see also Frieson v. Martuscello*, No. 11 Civ. 0168(PKC)(AJP), 2011 WL 2693564, at *12 n.14 (S.D.N.Y. July 12, 2011) (collecting cases); *report & recommendation adopted by* 2012 WL 1115459 (S.D.N.Y. Apr. 3, 2012); *Harris v. Smith*, 06 Civ. 7824 (DAB) (DF), 2011 WL 781128, at *7 (S.D.N.Y. Jan. 5, 2011) (noting that *Rosario* claims "are grounded in state case-law and statute; as such, they are not cognizable on federal habeas review." (citing *Estelle*, 502 U.S. at 68)), *report & recommendation adopted by* 2011 WL 797492 (S.D.N.Y. Mar. 7, 2011).

Whether in state court or this Court, petitioner has never alleged or provided evidence that withholding the missing page violated the Constitution or federal law. (*See* Tr. at 363–64;

18

State Ct. Rec. (Doc. No. 11-4) at 36–41; Pet. at 8.) Disclosure of a prosecutor's notes may be required under *Brady v. Maryland*, 373 U.S. 83 (1963), but only insofar as their contents are favorable to the accused and material to guilt or punishment. *See United States v. Dupuy*, 760 F.2d 1492, 1501 & n.3 (9th Cir. 1985) (citing *Brady*, 373 U.S. at 87). Here, petitioner never invoked *Brady* before the state court, nor provided any argument or evidence that the missing page was material and exculpatory, as must be shown for relief. *See Landy*, 141 F.3d 1151, 1998 WL 105768, at *1. Likewise, petitioner has never argued that his trial counsel was constitutionally ineffective under *Strickland* for failing to press his *Rosario* claim. *See, e.g.*, *Flores v. Demskie*, 215 F.3d 293 (2d Cir. 2000). In fact, trial counsel repeatedly sought to obtain a *Rosario* sanction, and petitioner nowhere challenges trial counsel's effectiveness in this regard. The substance of petitioner's claim is and has always been solely one of state law under *Rosario*.

Because petitioner's *Rosario* claim was based solely on state law, its denial is not subject to *habeas* review. Moreover, since it is too late to exhaust a federal or constitutional claim as to production of the notes, such a claim is considered procedurally defaulted, and thus barred from *habeas* review. *See Woodford*, 548 U.S. at 92–93. Accordingly, petitioner's third *habeas* claim is DENIED.

## CONCLUSION

For the reasons above, it is hereby ORDERED that petitioner's *habeas corpus* petition is DISMISSED in its entirety. The Court hereby DENIES a certificate of appealability as petitioner failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of Court is directed to dismiss this petition, send a copy of this Memorandum and Order to the petitioner, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
       June 25, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge